1
2
3
4
5

6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8  LORI S. SAVANNAH,                    )
                                        )
9          Plaintiff,                   )      CASE NO.  C04-1790-MJB[1]
                                        )
10         v.                           )      MEMORANDUM OPINION
                                        )
11  JO ANNE BARNHART,                   )
    Commissioner of Social Security,    )
12                                      )
           Defendant.                   )
13  _____ )

14         Plaintiff Lori Savannah appeals to the District Court from a final decision of the

15  Commissioner of the Social Security Administration (the "Commissioner") denying her

16  application for Supplemental Security Income benefits under Title XVI of the Social Security

17  Act.  For the reasons set forth below, the Commissioner's decision shall be AFFIRMED.

18                          I.  PROCEDURAL HISTORY

19         Plaintiff filed an application for Supplemental Security Income ("SSI") benefits on

20  September 18, 2000.  Tr. 97-99.  Plaintiff alleged that she became unable to work in May, 2000,

21  due to strokes, speech problems, confusion, cognitive disorders, asthma/COPD, seizures, head

22  injury, fatigue, joint pain, and multiple personality disorder (MPD).  Tr. 97, 107.  Her application

23  _____

24         [1]Pursuant to the consent of the parties, this case has been referred to the undersigned in
    accordance with 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, and Local Rule MJR 13.
25

26  MEMORANDUM OPINION
    Page - 1

1    for benefits was denied initially (Tr. 54, 57-60) and on reconsideration (Tr. 56, 63-65).  On

2    Plaintiff's timely request, an initial hearing was held on August 15, 2002, before Administrative

3    Law Judge ("ALJ") Arthur Joyner.  Tr. 591-609.  Plaintiff appeared at the hearing and was

4    represented by counsel, but she would not speak.  Tr. 593-597.  In lieu of Plaintiff testifying, the

5    ALJ agreed to give her a copy of his standard template of questions for hearings and allow her to

6    mail in her written responses.  Tr. 598.  A vocational expert ("VE"), Paul Prachyl, and a medical

7    expert ("ME"), Stuart Bramhall, M.D., were also present at the hearing.  (Tr. 593).  However,

8    only Dr. Bramhall, the ME,  testified.  (Tr. 604-606).  On the ME's recommendation, the ALJ

9    decided to send Plaintiff for psychological evaluation.  Tr. 606-607.

10       A supplemental hearing was held before ALJ Joyner on April 8, 2003.  Tr. 610-619.

11   Plaintiff, who appeared with counsel, had provided her written responses[2] to the ALJ's

12   questionnaire prior to the hearing.  Plaintiff stipulated, via her counsel, to an amended disability

13   onset date of February 1, 2002.  Tr. 612.  Two medical experts, C. Richard Johnson, M.D. and

14   John Lindberg, M.D., testified at the hearing.  Tr. 614-618.  The ALJ issued a decision on May

15   22, 2003, finding that Plaintiff was not disabled at any time through the date of the decision and

16   thus, not eligible for SSI payments.  Tr. 36-37.  The Appeals Council denied Plaintiff's request

17   for review, making the ALJ's decision the final decision of the Commissioner.  Tr. 8-10.  Plaintiff

18   timely filed her appeal with this Court.

19                                II.  THE PARTIES' POSITIONS

20        Plaintiff requests that the Court reverse the Commissioner's decision and remand for

21   award of benefits.  Plaintiff argues that the ALJ erred by: (1) finding that Plaintiff's condition of

22   "selective mutism" is not a medically determinable impairment; (2) failing to find that Plaintiff's

23   

24        [2]The ALJ noted that Plaintiff's written responses to the some of the questions appear in
     the record at Exhibit 27E.   Tr. 202-216, 612.

25   MEMORANDUM OPINION
26   Page - 2

1  factitious disorder is a severe impairment; (3) rejecting the opinion of medical expert Dr. C.

2  Richard Johnson that based on a combination of Plaintiff's psychological impairments, she equals

3  listing 12.07; (4) rejecting the opinions of Dr. Washburn and Dr. Glisky; and (5) failing to call a

4  vocational expert.  Defendant responds that the Court should affirm the Commissioner's final

5  decision because the ALJ applied correct legal standards and cited more than a scintilla of

6  evidence.

7  ## III.  STANDARD OF REVIEW

8  The court may set aside the Commissioner's denial of social security disability benefits

9  when the ALJ's findings are based on legal error or not supported by substantial evidence in the

10  record as a whole.  *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).  Substantial evidence is

11  defined as more than a mere scintilla but less than a preponderance; it is such relevant evidence

12  as a reasonable mind might accept as adequate to support a conclusion.  *Magallanes v. Bowen*,

13  881 F.2d 747, 750 (9th Cir. 1989).  The ALJ is responsible for determining credibility, resolving

14  conflicts in medical testimony, and for resolving ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035,

15  1039 (9th Cir. 1995).  Where the evidence is susceptible to more than one rational interpretation,

16  it is the Commissioner's conclusion which must be upheld.  *Sample v. Schweiker*, 694 F.2d 639,

17  642 (9th Cir. 1982).

18  ## IV.  EVALUATING DISABILITY

19  The claimant bears the burden of proving that he is disabled.  *Meanel v. Apfel*, 172 F.3d

20  1111, 1113 (9th Cir. 1999).  Disability is defined as the inability to engage in any substantial

21  gainful activity by reason of any medically determinable physical or mental impairment, which

22  can be expected to result in death, or which has lasted or can be expected to last for a continuous

23  period of not less than twelve months.  42 U.S.C. § 423 (d)(1)(A).

24  The Social Security regulations set out a five-step sequential evaluation process for

25

26  MEMORANDUM OPINION
Page - 3

1   determining whether claimant is disabled within the meaning of the Social Security Act. *See* 20

2   C.F.R. § 416.1520. At step one, the claimant must establish that he or she is not engaging in any

3   substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the claimant

4   must establish that he or she has one or more medically determinable severe impairments or

5   combination of impairments. If the claimant does not have a "severe" impairment, he or she is

6   not disabled. *Id.* at § (c). At step three, the Commissioner will determine whether the claimant's

7   impairment meets or equals any of the listed impairments described in the regulations. A

8   claimant who meets one of the listings is disabled. *See Id.* at § (d).

9       At step four, if the claimant's impairment neither meets nor equals one of the impairments

10   listed in the regulations, the Commissioner evaluates the claimant's residual functional capacity

11   and the physical and mental demands of the claimant's past relevant work. *Id.* at § (e). If the

12   claimant is not able to perform his or her past relevant work, the burden shifts to the

13   Commissioner at step five to show that the claimant can perform some other work that exists in

14   significant numbers in the national economy, taking into consideration the claimant's residual

15   functional capacity, age, education, and work experience. *Id.* at § (f); *Tackett v. Apfel*, 180 F.3d

16   1094, 1100 (9th Cir. 1999). If the Commissioner finds the claimant is unable to perform other

17   work, then the claimant is found disabled.

18                        V.  SUMMARY OF THE RECORD EVIDENCE

19       Plaintiff was 40 years old at the time of her initial hearing before the ALJ. She has a

20   GED and she also completed training in cosmetology. Tr. 113. Plaintiff's prior work

21   experience included work as a teacher's assistant, food worker, home chore worker, and yard

22   worker. Tr. 132-139. Plaintiff indicates that her illnesses or conditions began in 1997 or 1998

23   and she last worked in May, 2000. Tr. 107, 194. She asserts that "supervisors and co-workers

24   don't want to work with me because I miss so much work and have so many limitations." Tr.

25

26   MEMORANDUM OPINION
     Page - 4

107. She also indicates that she had to terminate her employment because of frequent absences. *Id.* Other evidence relevant to Plaintiff's allegations is incorporated into the discussion below.

## VI.  THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset of her disability. Tr. 18, 35.  At step two, he found that Plaintiff has the following severe impairments: asthma, hepatitis C, mild degenerative joint disease of the hips, a history of prescription drug abuse, opioid dependence on agonist therapy, dysthymia, posttraumatic stress disorder, a conversion disorder, cognitive disorder not otherwise specified, and a personality disorder not otherwise specified. *Id.*  Noting that Plaintiff was diagnosed with selective mutism, and that she alleged a history of strokes, or transient ischemic attacks, as well as diagnoses of multiple personality disorder, fibromyalgia, HIV infection, obsessive compulsive disorder and multiple sclerosis, the ALJ concluded that they are not medically determinable impairments.  At step three, he determined that Plaintiff has no impairment, either singly or in combination, which meets or equals the criteria of any listing in Appendix 1, Subpart P, Regulation No. 4.  Tr. 19, 36.

The ALJ found that the Plaintiff retains the residual functional capacity to lift or carry 20 pounds occasionally and 10 pounds frequently, and he also found that Plaintiff can stand or walk for six hours in an eight-hour workday; she is able to sit for six hours in an eight-hour day; she should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation; and she can perform simple repetitive tasks, but should not work with the public.  Tr. 34, 36.  At step four, the ALJ found that Plaintiff is unable to perform any of her past relevant work due to the exertional requirements and public contact involved.  *Id.*  At step five, he determined that Plaintiff retains the residual functional capacity to perform a significant range of light work. Using Medical-Vocational Rule 202.21 as a framework for decision-making, the ALJ found that

MEMORANDUM OPINION
Page - 5

1   there are a significant number of jobs in the national economy that Plaintiff can perform.  Tr. 34-

2   36, 37.  Thus, he concluded that Plaintiff was not disabled at any time through the date of the

3   decision.  Tr. 35, 36.

4                                    VII.  DISCUSSION

5   A.    ALJ'S Assessment of Plaintiff's Severe Impairments

6          Plaintiff argues that the ALJ erred in finding that her conditions of "selective mutism" and

7   factitious disorder are not severe impairments.  A claimant's impairment is not severe if it does

8   not significantly limit the claimant's physical or mental ability to do basic work activities.  20

9   C.F.R. §§ 404.1520(c), 404.1521(a).  Basic work activities are the abilities and aptitudes

10  necessary to do most jobs, including (1) physical functions such as walking, standing, sitting,

11  lifting, pushing, pulling, reaching, carrying or handling; (2) capacities for seeing, hearing, and

12  speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of

13  judgment; (5) responding appropriately to supervision, co-workers and usual work situations;

14  and (6) dealing with changes in a routine work setting.  *See* 20 C.F.R. §§ 404.1521, 416.921.

15  An impairment or combination of impairments can be found "not severe" only if the evidence

16  establishes a slight abnormality that has "no more than a minimal effect on an individual's ability

17  to work."  *See* SSR 85-28; *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) (adopting SSR

18  85-28).

19         1.     Selective Mutism

20         At step two of the evaluation process, the ALJ acknowledged that Plaintiff was

21  diagnosed with selective mutism, but concluded that it is not a medically determinable

22

23  impairment.  Tr. 19.  The ALJ articulated the following reasons for this conclusion:

24             The evidence reveals that her ability to speak is entirely volitional.  The claimant
               chose to speak with some doctors and admitted talking to friends and family.  She
25

26  MEMORANDUM OPINION
    Page - 6

also admitted to answering the phone on occasion.  Recent medical evidence reflects that the claimant elected to speak rather than write.  At examinations in which she elected to write her responses, she still uttered entirely intelligible words without apparent difficulty.

*Id.*

However, Plaintiff contends that selective mutism is a medically determined psychological impairment as it is demonstrable by medically acceptable clinical techniques.  She argues that Section 313.23 of the Diagnostic and Statistical Manual of Mental Disorders Fourth Edition (DSM-IV) sets out the diagnostic features and criteria for selective mutism[3], numerous doctors have found that Plaintiff meets the diagnostic criteria for selective mutism, and the ALJ provides no reason for rejecting their opinions.  Specifically, Plaintiff argues that Dr. Sang Suh and Dr. Palmer diagnosed selective mutism in Plaintiff and the ALJ assigned substantial weight to their opinions, but he ignored the diagnosis of selective mutism.  Defendant responds that the ALJ properly found that selective mutism was not a medically determinable impairment as defined in 20 C.F.R. § 416.908.

To satisfy step two's requirement of a severe impairment, the impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically

---

[3]Section 313.23 of the DSM-IV sets out the following diagnostic criteria for selective mutism:

A.   Consistent failure to speak in specific social situations (in which there is an expectation for speaking, e.g., at school) despite speaking in other situations.
B.   The disturbance interferes with educational or occupational achievement or with social communication.
C.   The duration of the disturbance is at least 1 month (not limited to first month of school).
D.   The failure to speak is not due to a lack of knowledge of, or comfort with, the spoken language required in the social situation.
E.   The disturbance is not better accounted for by a Communication Disorder (e.g., Stuttering) and does not occur exclusively during the course of a Pervasive Developmental Disorder, Schizophrenia, or other Psychotic Disorder.

MEMORANDUM OPINION
Page - 7

1   acceptable clinical and laboratory diagnostic techniques. *See* 20 C.F.R. §§ 404.1508, 416.908.

2   A physical or mental impairment must be established by medical evidence consisting of signs,

3   symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not

4   suffice. *Id.*    Thus, regardless of how many symptoms an individual alleges, or how genuine the

5   individual's complaints may appear to be, the existence of a medically determinable physical or

6   mental impairment cannot be established in the absence of objective medical abnormalities, i.e.,

7   medical signs and laboratory findings. SSR 96-4p. Moreover, "[a]lthough a treating physician's

8   opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ

9   with respect to the existence of an impairment or the ultimate determination of disability."

10  *Ukolov v. Barnhart*, 430 F.3d 1002, 1004 (9th Cir. 2005) (citations omitted).

11          Careful review of the record in this case reveals that although Dr. Suh and Dr. Palmer

12  diagnosed selective mutism as one of Plaintiff's conditions, neither of them opined that it

13  significantly limited her ability to perform basic work activities. In a December 7, 2000, report

14  on his evaluation of Plaintiff, Dr. Richard Palmer, a clinical psychologist, states that Plaintiff

15  explained she felt her "words come out sounding funny and that embarrasses me" so she does not

16  talk.[4]  Tr. 298.  He indicated that Plaintiff stressed the importance of embarrassment and

17  "nervousness" in her muteness and presented not talking as a *volitional decision.  Id.* (emphasis

18  added).  The report also indicated that "[Plaintiff] noted that she might speak during our session

19  and she did indeed blurt out three or four words but only at a single point." *Id.*  Dr. Palmer

20  concluded that "Ms. Savannah's mutism currently is clearly an *elective behavior* because she is

21  supposedly "embarrassed" [by] the way she sounds.  She talks freely with family and friends and

22  a few words that sounded completely normal slipped out during the testing. " Tr. 302 (emphasis

23  _____

24          [4]Dr. Palmer noted that Plaintiff did not speak but used the pad he provided to write out
    her answers.  Tr. 298.

25

    MEMORANDUM OPINION
26  Page - 8

1    added).

2           Likewise, in a report of his examination of Plaintiff on April 27, 2002, Dr. Sang Suh

3    notes that Plaintiff indicated[5] "[s]he does not speak because she does not trust people. She is

4    able to talk and readily does so with her husband."[6] Tr. 362.   Dr. Suh stated the following as his

5    overall impression and prognosis for Plaintiff:

6               Ms. Savannah is a woman with a self report of being from very abusive
                environment. Her history of various symptoms such as multiple personality, self
7               mutilation, selective mutism, depression, and substance abuse are commonly seen
                in people from such backgrounds. Her primary diagnosis remains substance
8               dependance and personality disorder. In my opinion, *her ability to maintain
                gainful employment overall is mild to moderately limited.*
9
     Tr. 364 (emphasis added).
10
            Additionally, Dr. Steven Haney, a state agency medical consultant who reviewed the
11
     evidence and completed a Psychiatric Review Technique form regarding Plaintiff on January 1,
12
     2001, concluded that Plaintiff is *selectively* mute. Tr. 349 (emphasis in original).  He noted that
13
     "[s]he readily admits that she can talk at home but she elects not to talk during the CE.
14
     However, even during the CE she blurted out a few words once and Dr. Palmer noted that her
15
     speech was not unusual or abnormal in any way." *Id.* Dr. Haney concluded that *volitional*
16
     *mutism* is not a psychiatric disorder and is therefore not a medically determinable impairment.
17
     *Id.* (emphasis added).
18

19
            The ALJ's decision  indicates that he assigned substantial weight to Dr. Palmer's opinion
20
     because he performed a thorough evaluation that included standardized testing and because
21

22
            [5]Dr. Suh indicated that Plaintiff refused to speak during the interview and responded to his
23   questions by writing down all her answers making it difficult to get as much of the content of the
     interview as he would have liked. Tr. 362.
24

25   MEMORANDUM OPINION
26   Page - 9

1   Plaintiff also appeared to have "provided a forthright account of her activities at this evaluation

2   rather than minimizing them." Tr. 23. The ALJ also assigned substantial weight to Dr. Suh's

3   opinion regarding Plaintiff's function and diagnosis, finding that his assessment was consistent

4   with Plaintiff's activities, presentation, and contradictory self-report. Tr. 26. The ALJ indicated

5   that he assigned some weight to Dr. Haney's findings, such as the conclusion that Plaintiff's

6   mutism was volitional. Tr. 23.

7         This evidence demonstrates that the ALJ's conclusion that Plaintiff's selective mutism

8   was volitional is supported by the opinions of Dr. Palmer and Dr. Haney. Additionally,

9   substantial evidence in the record supports the ALJ's determination that recent medical evidence

10  reflects Plaintiff's election to speak rather than write. *See e.g.,* Tr. 394, 408, 409, 411, 416, 421,

11  423, 426, 499, 515. These medical records, which spans a period from February through

12  December 2002, contain no reference to selective mutism as part of Plaintiff's past or current

13  medical history. When this evidence is considered in conjunction with Dr. Suh's opinion

14  regarding the mild to moderate impact of Plaintiff's primary diagnosis on her ability to work, this

15  Court concludes that it constitutes substantial evidence that supports the ALJ's determination

16  that Plaintiff's selective mutism is not a medically determinable impairment.          2.

17  Factitious Disorder

18        Plaintiff argues that Dr. Suh diagnosed Plaintiff with a "factitious disorder NOS"[7] and not

19  a somatoform disorder. She contends that the ALJ erred in failing to provide a reason for

20  rejecting this opinion by Dr. Suh and in failing to find that Plaintiff's factitious disorder is a

21

22        [7]Factitious Disorders are characterized by physical or psychological symptoms that are
23  intentionally produced or feigned in order to assume the sick role. The lack of external incentives
    for feigning symptoms distinguishes factitious disorder from malingering. DSM-IV-TR, p. 513.
24  The category of "factitious disorder not otherwise specified" includes disorders with factitious
    symptoms that do not meet the criteria for Factitious Disorder. *Id.* at p. 517.
25

26  MEMORANDUM OPINION
    Page - 10

severe impairment. Defendant responds that the ALJ gave Plaintiff the benefit of the doubt that her symptoms were not intentionally produced by finding that her severe impairments include a conversion disorder[8], which is an alternative somatoform-type impairment.

Review of the record reveals that Dr. Suh was the only physician to diagnose Plaintiff with factitious disorder. However, as noted above, Dr. Suh identified substance abuse and personality disorder as Plaintiff's primary diagnosis and he opined that her ability to maintain gainful employment was only mild[ly] to moderately limited. Tr. 364. Thus, although Dr. Suh included factitious disorder in Plaintiff's overall diagnosis, he did not opine that it significantly limited her physical or mental ability to do basic work activity. Thus, this Court concludes that ALJ did not err in his decision that plaintiff's factitious disorder was not of disabling severity.

B.    ALJ'S Evaluation of the Medical Expert's Opinion

Plaintiff argues that the ALJ erred in rejecting the opinion of the medical expert, Dr. C. Richard Johnson, that based on a combination of Plaintiff's psychological impairments she equals listing 12.07.[9] Plaintiff contends that the ALJ failed to consider Dr. Johnson's testimony about listing 12.07. Defendant responds that Dr. Johnson never testified that Plaintiff "equals" listing 12.07 and that his testimony that Plaintiff "would probably meet" the "C" criteria for section 12.07 is legally and factually incorrect.

_____

[8]The essential feature of Conversion Disorder is the presence of symptoms or deficits affecting voluntary motor or sensory function that suggest a neurological or other general medical condition (Criteria A). Psychological factors are judged to be associated with the symptom or deficit is preceded by conflicts or other stressors (Criterion B). The symptoms are not intentionally produced or feigned, as in Factitious Disorder or Malingering (Criterion C). DSM-IV, Section 300.11.

[9]Listing 12.07 defines Somaoform Disorders as physical symptoms for which there are no demonstrable organic findings or known physiological mechanisms. The listing further indicates that the required level of severity for these disorders is met when the requirements in both A and B are satisfied. 20 C.F.R. Pt 404, Subpt. P, App. 1.

MEMORANDUM OPINION
Page - 11

1    If a claimant meets or equals a listed impairment he or she will be found disabled at step

2    three of the sequential evaluation process without further inquiry. *See* 20 C.F.R. § 404.1520(d).

3    To *meet* a listed impairment, a claimant must establish that he or she meets each characteristic of

4    a listed impairment relevant to his or her claim. To *equal* a listed impairment, a claimant must

5    establish symptoms, signs and laboratory findings "at least equal in severity and duration" to the

6    characteristics of a relevant listed impairment, or, if a claimant's impairment is *not* listed, then to

7    the listed impairment "mot like" the claimant's impairment. 20 C.F.R. § 404.1526.

8    Administrative law judges may ask for and consider opinions from medical experts on the nature

9    and severity of [claimant's] impairment(s) and on whether [claimant's] impairment(s) equals the

10    requirements of any listed impairment. *See* 20 C.F.R. 404.1527(f)(2)(iii). However, the ALJ

11    may reject a non-treating, non-examining medical opinion provided his findings are supported by

12    substantial evidence. *See Magallanes*, 881 F.2d at 751.

13    In the present case, Dr. Johnson's testimony as a medical expert at Plaintiff's

14    supplemental hearing before the ALJ on April 8, 2003, was as follows:

15
16        **Q:** Okay. Dr. Johnson, based on your review of the record, could you give me the -- your assessment of the Claimant's impairments?
17        **A:** Certainly. The record has a variety of diagnostic opinions in it. Among them, post traumatic stress disorder, dysthymia versus major depressive disorder, self-reported dissociative identity disorder, a history of opioid
18    dependence, a diagnosis of borderline -- possible diagnosis of borderline personality disorder, antisocial personality disorder. Putting all these together, I
19    think that the most likely diagnoses are that of 12.06 and 12.08 diagnoses, as well as the substance-abuse diagnosis.
20        **Q:** All right. Let's do a [INAUDIBLE], please. 12.06, 12.08 and 12.09?
    **A:** Yeah. I there's also a -- I think one should entertain a 12.07 diagnosis,
21    as well. Under the –
    **Q:** Okay. 12.06?
22        **A:** Under 12.06, the suggestion of the post traumatic stress disorder would come under that. She has been diagnosed with selective mutism, which
23    there is one reference to rule out conversion reaction, which would be a hysterical reaction, which would fall under that diagnosis, 12.06, as well. Under the 12.0 –
24        **Q:** 7?
    **A:** -- 7 diagnosis, I think here we have a history of multiple physical
25

26    MEMORANDUM OPINION
Page - 12

symptoms, several years' duration, probably beginning before the age of 30.  And we also have a non-organic disturbance of speech, at least symptomatically.  Under the 12.08 diagnoses, I think we have a history of intense, unstable interpersonal relationships with impulsive and damaging behavior, and the possibility of antisocial traits.

**Q:** B criterion?

**A:** I think there are moderate restrictions of activities of daily living.  I think they're are at least moderate to marked with the difficulty in maintaining social functioning and I think there are moderate to marked difficulties in maintaining concentration, persistence and pace.  I'm not prepared to testify to number four.

**Q:** Okay.  How about C criteria?

**A:** C criteria probably would meet number two.

**ALJ:** Okay.  Counsel, questions?

**ATTY:** And does that appear to go back to 2/1/02?

**ME:** Yes, sir.

**ATTY:** Thank you.  No other questions.

Tr. 614-615.

The ALJ gave the following reasons for rejecting Dr. Johnson's opinion:

Dr. Johnson opined that the claimant had an anxiety disorder and a personality disorder that met the criteria of sections 12.06 and 12.08 based on the "C" criteria described in the regulations.  He based this opinion on the conclusion that the claimant had impairments resulting in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate.  However, I note that this is not sufficient to meet either listing 12.06 or 12.08 under the regulations.  The criteria of section 12.08 are not met under the "C" criteria, and to meet the criteria of section 12.06 an individual must have a complete inability to function independently outside one's home.  This clearly is not true of the claimant.

Tr. 30.

The ALJ's reasoning here correctly states the "C" criteria for listing 12.06 and notes the absence of "C" criterial for listing 12.08.  *See* 20 C.F.R., Pt 404, Subpt. P, App. 1.  The record also contains substantial evidence to support the ALJ's conclusion that Plaintiff does not meet the "C" criteria of listing 12.06 as she does not "have a complete inability to function independently" outside her home.  As argued by Defendant, Plaintiff's independent functioning outside her home includes the ability to drive (Tr. 205, 473),  attend medical appointments alone (Tr. 473), go grocery shopping (Tr.117, 141), look for items for her various collections (Tr.

MEMORANDUM OPINION
Page - 13

1    474), and racing on the freeway late at night (Tr. 300, 349).  Furthermore, Dr. Johnson's

2    testimony that Plaintiff has "*moderate to marked* difficulties" in maintaining social functioning, as

3    well as in maintaining concentration, persistence and pace, does not satisfy the required "B"

4    criteria of "*marked* difficulties" in these functions under listings 12.06, 12.07, or 12.08.  20

5    C.F.R., Pt 404, Subpt. P, App. 1.  Accordingly, this Court concludes that the ALJ did not err in

6    rejecting Dr. Johnson's opinion.

7    C.    ALJ's Evaluation of Examining Physicians' Opinion

8           Plaintiff argues that the ALJ erred in rejecting the opinions of Dr. Richard Washburn,

9    Ph.D. and Dr. Martha L. Glisky, Ph.D., each of whom performed psychological evaluations of

10   Plaintiff.  When rejecting the uncontradicted opinion of an examining physician, the

11   Commissioner must provide "clear and convincing" reasons for doing so.  *Lester v. Chater*, 81

12   F.3d 821, 830 (9th Cir. 1996)(citations omitted).  If the examining physician's opinion is

13   contradicted, then the Commissioner must provide specific and legitimate reasons that are

14   supported by substantial evidence in the record when rejecting this opinion.  *Id.* at 830-31.

15          1.    Dr. Washburn

16          Dr. Washburn conducted his psychological evaluation of Plaintiff on April 25, 2001.  Tr.

17   351-355.  His summary of Plaintiff's medical history notes that she is not able to talk when she is

18   away from home, a problem she has had for about 18 months.  Tr. 351.  He also notes that

19   Plaintiff reported she had a stroke three times, that she lost her speech when she had a stroke,

20   and that she has asthma, possible lupus or MS, and may have dissociative disorder with multiple

21   personalities.  *Id.*  Dr. Washburn's diagnosis for Plaintiff was dysthymic disorder/generalized

22   anxiety; schizotypal personality disorder with borderline features; depressed personality disorder

23   with avoidant, schizoid, and passive aggressive features; and rule out dissociative disorder.  Tr.

24   352.  Dr. Washburn assessed a marked degree of severity in regards to depressed mood, verbal

25

26   MEMORANDUM OPINION
     Page - 14

1    expression of anxiety or fear, physical complaints (for which he listed stroke, possible lupus or

2    M.S.), and global illness. *Id.* In assessing Plaintiff's functional limitations, Dr. Washburn opined

3    that Plaintiff has a marked degree of limitation in her ability to relate appropriately to co-workers

4    and supervisors; ability to interact appropriately in public contacts; and ability to control physical

5    or motor movements and maintain appropriate behavior. Tr. 353. He opined that Plaintiff has

6    severe limitation in her ability to respond appropriately to and tolerate the pressures and

7    expectation of a normal work setting. *Id.*

8         The ALJ indicated that he assigned no weight to Dr. Washburn's opinion because Dr.

9    Washburn based his conclusions, in part, on Plaintiff's self reported history of strokes, for which

10   there is no objective support. Tr. 24. The ALJ also concluded that there is no indication that

11   Dr. Washburn reviewed Plaintiff's records or performed a mini mental status examination. *Id.*

12        Plaintiff contends that the ALJ's reasons for rejecting Dr. Washburn's opinion are neither

13   legitimate nor are they supported by the record.  She argues that while Dr. Washburn notes that

14   Plaintiff reports that she had three strokes, there is no evidence that he used this information to

15   form his opinion.  Plaintiff also argues that the ALJ ignores the extensive testing done by Dr.

16   Washburn.

17        The Court agrees that Dr. Washburn appears to have conducted some testing of Plaintiff,

18   given that he attached Plaintiff's results from an MCMI Scoring Program (Tr. 355) to the

19   psychological/psychiatric evaluation form (Tr. 351-354).  However, the record also reflects that

20   Dr. Washburn not only noted Plaintiff's report of having three strokes, but he clearly factored the

21   alleged strokes into his assessment.  In rating the severity of Plaintiff's functional mental

22   disorders, Dr. Washburn indicates that "stroke appears to have affected speech and walking."

23   Tr. 352. Additionally, in setting out his basis for rating Plaintiff as having a "marked" degree of

24   limitation in her ability to relate to co-workers, supervisors, and to respond appropriately to

25
26   MEMORANDUM OPINION
     Page - 15

1  pressures and expectations of a normal work setting, Dr. Washburn again plainly states "*stroke*

2  *impairs speech and walking*; complaints of pattern of picking abusive men; and reports father

3  was physically abusive to point he broke her arm." *Id.*   More significantly, Dr. Washburn's

4  prognosis was that Plaintiff's "combination of *stroke limitations* and psychological problems

5  make it unlikely that she will be able to work."  Tr. 354.  Yet there is not objective medical

6  evidence of any stroke(s).

7         Because it is undisputed that there is no objective medical evidence in the record that

8  supports Plaintiff's claim that she had three strokes, the Court finds that the ALJ articulated a

9  specific and legitimate reason for rejecting Dr. Washburn's opinion on the basis that he relied in

10  part on such evidence for which there was no objective support.

11         2.   Dr. Glisky

12         Dr. Glisky performed a psychological assessment and evaluation of Plaintiff's intellectual

13  and memory functioning on September 18, 2002.  Tr. 472-480.  She noted that Plaintiff did not

14  speak, but provided all of her communication in writing.  Tr. 473.  She further noted that

15  Plaintiff's handwriting was clear and legible, she wrote in a grammatically correct way, and her

16  thoughts appeared logical and coherent.  Describing the results of Plaintiff's testing, Dr. Glisky

17  indicated that Plaintiff's overall IQ score fell into the "Extremely Low" range of functioning, and

18  that her Verbal IQ was in the "Borderline" range and significantly higher than her Performance

19  IQ, which was primarily due to her performance on the Vocabulary and Information subtests,

20  which were her highest scores and in the Average Range.  Tr. 475.  Dr. Glisky also indicated that

21  Plaintiff's Working Memory Index was an area of relative weakness, and lower than her other

22  index scores.  *Id.*  She further noted that Plaintiff's memory scores showed slightly more

23  variability and ranged from the "Extremely Low" to the "Average" range, and that overall,

24  Plaintiff's memory functions were slightly higher than expectation based on her overall IQ scores.

25
26  MEMORANDUM OPINION
    Page - 16

1   Plaintiff's performance on both Part A and Part B of the Trail Making Tests were significantly

2   reduced, she performed slowly, and made numerous errors on part B.  *Id.*

3       Dr. Glisky diagnosed Plaintiff with selective mutism, opioid dependence on agonist

4   therapy, cognitive disorder NOS, anxiety disorder NOS, rule out post traumatic stress disorder,

5   borderline intellectual functioning.  Tr. 476.  Dr. Glisky opined that Plaintiff's intellectual

6   functions were on the cusp between Borderline Intellectual Functioning and Mild Mental

7   Retardation, and her intellectual functions were likely further compromised by her cognitive

8   deficits related to possible brain injuries or TIAs.  *Id.*  She opined that Plaintiff has moderate

9   marked limitations understanding, remembering, and carrying out detailed instructions.  Tr. 479.

10  She also opined that Plaintiff has extreme limitations interacting appropriately with the public,

11  and marked limitations interacting appropriately with supervisors and coworkers.  Tr. 480.  Dr.

12  Glisky's stated support for this latter assessment was that "at this time [plaintiff] is mute and thus

13  will have significant difficulties interacting with anyone unless it can be done in writing.  She also

14  described anxieties that will also likely affect her response to pressure."  *Id.*

15      Here, the ALJ indicates that he did not assign substantial weight to Dr. Glisky's opinion

16  regarding Plaintiff's ability to interact with people.  Tr. 29.  As support for this conclusion, he

17  noted her mutism is entirely volitional and the only time she interacts in writing is at disability

18  evaluations and medical appointments.  *Id.*  The ALJ also stated the following:

19          With respect to the claimant's performance on intellectual testing, I note that she
            reportedly obtained her GED and denied involvement in special education in
20          school.  Again there is no objective evidence to support the claimant's reports of
            strokes, TIA's or head injuries.  I note that the claimant provide extensive written
21          statements in connection with this claim that are well written and not reflective of
            someone with intellectual deficits bordering on mild retardation.

22  Tr. 29.  Plaintiff argues that the ALJ dismissed Dr. Glisky's report by substituting his judgment

23  for that of the doctor.

24      However, this Court finds that the ALJ articulated specific and legitimate reasons that are

25  MEMORANDUM OPINION

26  Page - 17

1   supported by substantial evidence in the record for rejecting Dr. Glisky's opinion.  First, for the

2   reasons discussed in section "A.1." supra., the ALJ's determination that Plaintiff's mutism was

3   volitional was an appropriate basis for rejecting Dr. Glisky's opinion about Plaintiff's ability to

4   interact with other people.  Likewise, the ALJ properly rejected Dr. Glisky's opinion to the

5   extent that she relied on Plaintiff's claims of strokes, TIAs or head injuries because the record

6   contains no medical evidence that corroborates these claims.  Indeed, Dr. Glisky, herself,

7   acknowledged the absence of such evidence.  *See* Tr. 476 (Dr. Glisky notes there were no

8   medical records {such as CT or MRI scans} to confirm these diagnoses).  Dr. Glisky's also

9   noted that Plaintiff's written verbal expression was intact, and that she demonstrated intact

10  reasoning and judgment.  Accordingly, this Court concludes that the ALJ did not err in rejecting

11  Dr. Glisky's opinion regarding Plaintiff's intellectual deficits.

12  D.    ALJ's Failure to Call a Vocational Expert

13          Plaintiff contends that the ALJ erred in relying on the Medical-Vocational Guidelines.

14  She argues that because the ALJ found that she has a severe mental impairment and she could

15  not return to her past work, he erred in failing to call a vocational expert.  The regulations do

16  not, however, preclude the use of the Medical-Vocational Guidelines ("the grids") when a

17  nonexertional limitation[10] is alleged.  *Razey v. Heckler*, 785 F.2d 1426, 1430 (9th Cir. 1986).

18  They explicitly provide for the evaluation of claimants asserting both exertional and

19  nonexertional limitations.  *See* 20 C.F.R. Pt. 404, Subpt. P, App 2 , § 200.00(e).  Nonexertional

20  impairments may or may not affect a person's capacity to carry out the primary strength

21  requirements of jobs, and they may or may not significantly narrow the range of work a person

22  can do.  *See* SSR 83-14, SSR 85-15.  The ALJ should first determine if a claimant's non-

23

24          [10]Any functional or environmental job requirement which is not exertional is
    "nonexertional."  SSR 83-14.

25

26  MEMORANDUM OPINION
    Page - 18

1    exertional limitations significantly limit the range of work permitted by his exertional limitations.

2    *Derosiers v. Secretary of Health and Human Servs.*, 846 F.2d 573, 577 (9th Cir. 1988) (internal

3    citations omitted).  The ALJ must weigh conflicting evidence concerning the claimant's past

4    work experience, education, and present psychological and physical impairments.  The ALJ then

5    applies the grids to these factors, ensuring that the final determination will be both consistent

6    with other similar cases and expeditious.  *Id.*

7         Here, the ALJ determined that based upon Plaintiff's residual functional capacity, she is

8    capable of performing a significant range of light work. Tr. 34.  He also determined that the

9    evidence supports a finding that Plaintiff's ability to perform all or substantially all of the

10   requirements of light work is impeded by additional non-exertional limitations, i.e., she is limited

11   to simple repetitive task, she should not work directly with the public, and she should avoid

12   concentrated exposure to fumes, odors, dust, gases, and poor ventilation.  Tr. 34-35.

13   However, the ALJ noted that SSR 85-15[11], states that where a person has a medical restriction to

14   avoid excessive amounts of dust, etc., the impact on the broad world of work would be minimal.

15   Tr. 35.  These facts demonstrate that the ALJ properly considered Plaintiff's nonexertional

16   impairments and found that they did not significantly affect Plaintiff's RFC.  Accordingly,

17   because the regulations allow the use of the grids under these circumstances, the Court

18   concludes that the ALJ did not err by not calling a Vocational Expert.

19

20                               VIII.  CONCLUSION

21        Based on the foregoing, the Court finds that the Commissioner's decision denying

22   Plaintiff's application for SSI benefits is supported by substantial evidence and is free of legal

23   _____

24        [11]Social Security Ruling 85-15 discusses the Medical-Vocational Rules as a framework for
     evaluating solely nonexertional impairments.

25

     MEMORANDUM OPINION
26   Page - 19

1    error.  Therefore, this Court AFFIRMS the Commissioner's decision.

2         DATED this 16th day of November, 2005.

3

4

5         _____
          MONICA J. BENTON
6         United States Magistrate Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    MEMORANDUM OPINION
      Page - 20
26